

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

PERFECTO RODRIGUEZ,  )
                               )
       Plaintiff,  )
                               )
v.                            )   Case No. CIV-09-129-JHP
                               )
MICHAEL J. ASTRUE,           )
Commissioner of Social    )
Security Administration,  )
                               )
       Defendant.  )

## REPORT AND RECOMMENDATION

Plaintiff Perfecto Rodriguez (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 1, 1961 and was 47 years old at the time of the ALJ's decision. Claimant completed his education through high school. Claimant has worked in the past as a cook. Claimant alleges an inability to work beginning September 1, 2005 due to carpal tunnel syndrome, diabetes mellitus, degenerative disc

disease, depression, and borderline personality disorder.

**Procedural History**

On August 4, 2006, Claimant filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 11, 2008, an administrative hearing were held before ALJ Lantz McClain in Sallisaw, Oklahoma. On August 25, 2008, the ALJ issued an unfavorable decision on Claimant's application. On March 26, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) engaging in

4

a faulty credibility analysis; (2) engaging in a faulty RFC evaluation; (3) failing to find Claimant's mental impairments as disabling; and (4) not finding Claimant met a listing for his affective disorder.

## Credibility Evaluation

Claimant first challenges the ALJ's analysis and evaluation of his credibility. In his decision, the ALJ found Claimant's credibility was

> diminished substantially because almost all of his diabetes check-ups show that his diabetes is under control with the same being true for his high blood pressure. Additionally the claimant alleges back problems; however, inconsistently he does not complain of his back to his treating sources. The claimant also was released to regular duty with respect to his wrist complaints on December 12, 2006. . . .
>
> As for the medical opinion evidence, it is given full weight because it is supported by objective medical evidence. The claimant's testimony is not consistent with the medical opinions of his treating physicians. His allegations of pain and limitation are inconsistent with the objective medical evidence. With respect to the claimant's mental impairments, the evidence from Dr. Walz demonstrates that the claimant also is exaggerating the extent of his mental impairments based on secondary gain.
> . . . .

(Tr. 19-20).

Claimant challenges the ALJ's findings, contending he only cited those medical records which were favorable or showed improvement and ignored those that showed his diabetes and

5

hypertension was not well-controlled. The ALJ cited to medical records which indicated Claimant's conditions were controlled in January of 2007 and March and May of 2008. (Tr. 18-19, 232, 234, 245). Claimant cites to contrary prior evidence which indicates he "thinks his blood sugar may be low" (Tr. 166) and "HTN-Suboptimal control, DMII-BS seems to be better past month" (Tr. 167). Additionally, a medical note from May of 2008 states Claimant "c/o burning sensation on tops of bil feet." (Tr. 232). A report from July of 2007 shows Claimant's "blood sugs is a little too high (119)." (Tr. 241).

This Court cannot conclude the ALJ's findings that Claimant's diabetes and hypertension were controlled and does not affect his ability to work, in particular in the later reports, were not supported by substantial evidence. The ALJ has cited to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Adams v. Chater, 93 F.3d 712, 714 (10th Cir. 1996)(citations omitted).

Claimant also contends the ALJ's findings as to his credibility on complaints of pain are not supported by the medical record. Claimant cites to the record with regard to his carpal tunnel surgery. Specifically, Claimant refers to the examination on November 6, 2006 by Dr. Wojcich L. Dulowski wherein he noted

"bilateral painful wrists." On examination, Dr. Dulowski found Claimant "has difficulty to walk on heel and tiptoes because of back pain. He uses some carpal tunnel splints. Handgrip strength is 3/5 on the right side and 5/5 on the left side. He has good gross and fine manipulation." (Tr. 206). As the ALJ notes, however, Claimant's treating physician, Dr. James E. Kelly, III found Claimant could return to regular duty on December 12, 2006. (Tr. 221). Dr. Kelly stated he expected his grip strength to return to 100% within nine months as his "thumb is doing quite well." (Tr. 220). Again, the ALJ's findings in this regard are well-supported by substantial evidence.

### RFC Evaluation

Claimant contends the ALJ failed to include the limitations of needing irregular breaks to monitor and test his blood sugar, use the restroom due to frequent urination as a side effect of Lisinopril, and the need to rest due to his lack of sleep. Claimant also asserts the ALJ should have included additional limitations concerning the use of his hands. As a result of the ALJ's alleged failure to include these limitations, Claimant asked improper hypothetical questions of the vocational expert utilized in this case and the ALJ's step five determination was deficient.

While Claimant mentioned "urinary frequency" in a June 2006

examination, no objective medical finding of such was made by the physician or suggests that this is indeed a side effect of Lisinopril. (Tr. 168). Concerning the need for rest due to lack of sleep, the record indicates Claimant usually sleeps from around midnight to 9:00 a.m. or 10:00 a.m. (Tr. 28). Claimant suggests he suffers from insomnia but, again, no objective medical finding of this condition is documented in the record.

Claimant contends the ALJ should have included limitations derived from foot neuropathy in his RFC evaluation. Claimant again refers to the complaint of a "burning sensation" on the tops of his feet. (Tr. 232). No diagnosis of diabetic neuropathy appears in the record – only a recitation of Claimant's complaint.

Claimant returns to his credibility argument that the limitations in the use of his hands referenced in Dr. Dulowski's and Dr. Varghese's reports should have been included. (Tr. 205-06, 211). Both found decreased grip strength but good fine and gross manipulation.

With regard to all of these conditions, no physician has outlined any limitations upon Claimant's ability to work – the primary concern of this Court's analysis. The ALJ's must focus on a claimant's functional loss, not specific diagnoses. 20 C.F.R. §§ 404.1520(c), 404.1525(d), 416.920(c), 416.925(d). The only

condition referenced by Claimant which included a functional limitation was his hand use. The ALJ properly considered this condition in his RFC in including the limitation of "not constant use of the hands for repetitive tasks such as keyboarding and simple, repetitive tasks." (Tr. 17).

Considering the questioning of the vocational expert, a vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). The ALJ in this case appropriately included the functional limitations brought about by Claimant's hand condition in his questioning of the vocational expert. (Tr. 36). The vocational expert included the jobs of a laundry press person and mail clerk jobs in consideration of Claimant's RFC. (Tr. 37).

**Inclusion of Mental Impairments in RFC**

Claimant also asserts the ALJ should have included mental limitations in his RFC. Claimant relies upon the report of Dr. Patricia Walz in making this assertion. Dr. Walz, a consultative

examiner, found Claimant had moderate difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Tr. 197).

Additionally, Dr. Sally Varghese, a non-examining consultant, completed a Mental Residual Functional Capacity Assessment on Claimant. She found he was markedly limited in the ability to understand and remember detailed instructions and the ability to carry out detailed instructions. (Tr. 201). Dr. Varghese also found marked limitations in Claimant's ability to interact appropriately with the general public. (Tr. 202). She concluded, however, that Claimant can perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, cannot relate to the general public, and can adapt to a work situation. (Tr. 203).

The source of a medical opinion must be considered in determining the weight to which the opinion is entitled. Generally,

> The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.

Robinson v. Barnhart, 366 F.3d, 1078, 1084 (10th Cir. 2004).

In this case, the ALJ was entitled to give the opinion of the consultative examiner's opinion more weight than that of the non-examining physician. The ALJ's inclusion of a limitation to incidental contact with the public is consistent with the findings of Dr. Walz in her report. The ALJ's RFC determination is supported by substantial evidence in the record.

## Listing 12.04

As a final argument, Claimant contends the ALJ should have included a personality disorder and depression in determining whether he met Listing 12.04 for an affective disorder. In order to demonstrate a condition is sufficiently severe to meet Listing 12.04, a claimant must be able to show that his mental impairment resulted in limitations in two of the following areas: marked restrictions of activities of daily living; marked deficiencies in maintaining social functioning; marked deficiencies in maintaining concentration, persistence or pace, repeated episodes of decompensation, each of extended duration.

In this case, the ALJ determined Claimant had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation. (Tr. 16-

17). These findings were consistent with the medical evidence provided by Dr. Walz. (Tr. 197).

In asserting a condition meets a listing, a claimant bears the burden of demonstrating that his impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). Claimant did not meet his burden in this case for meeting the criteria for Listing 12.04 considering the medical evidence developed in the case. The ALJ's findings at step three are consistent with Dr. Walz's findings and, therefore, substantial evidence supports his conclusions.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 1st day of September, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE